***********
The undersigned have reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Holmes. The appealing party has not shown good grounds to reconsider the evidence; receive further evidence; rehear the parties or their representatives; and having reviewed the competent evidence of record, the Full Commission affirms the Opinion and Award of Deputy Commissioner Holmes with minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. That the Parties are bound by and subject to the North Carolina Workers' Compensation Act.
2. That an Employer-Employee relationship existed at the time of the alleged accident.
3. That all Parties were properly before the North Carolina Industrial Commission and that the North Carolina Industrial Commission had jurisdiction over the Parties and subject matter of this claim.
4. That Employee-Plaintiff had an average weekly wage of $453.75.
5. That Employee-Plaintiff filed a Form 18 on or about October 9, 2002, alleging an injury to his chest occurring according to Employee-Plaintiff on June 2, 2002.
6. Defendants denied this claim via a Form 61 filing.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Employee-Plaintiff was approximately 31 years of age at the time of hearing.
2. Employee-Plaintiff has a high school degree and can read and write English without difficulty.
3. Employee-Plaintiff was hired by Employer-Defendant on or about February 21, 2002. Employee-Plaintiff was employed as a rental yard technician. Employee-Plaintiff's job required him to work on and around heavy machinery and to ensure that it was in proper working order.
4. Employee-Plaintiff testified before the Deputy Commissioner that on June 2, 2002, he climbed up onto a CXS 240 Excavator to check its fuel level. Employee-Plaintiff testified before the Deputy Commissioner that he did not realize the top of the machine had a fuel spill, such that when he stepped near the fuel tank cap, he slipped on spilled fuel and fell. There were no witnesses to said fall.
5. Employee-Plaintiff testified before the Deputy Commissioner that as result of slipping on spilled fuel, he fell off this machine and while falling to the ground, struck his chest on the edge of a door to one of the machine compartments and then landed on the ground next to the machine.
6. Employee-Plaintiff testified at hearing before the Deputy Commissioner that as a result of the fall, he had bleeding to his chest and two puncture wounds located at his chest.
7. Employee-Plaintiff's testimony at hearing before the Deputy Commissioner contradicts his Recorded Statement.
8. David Taylor appeared at hearing before the Deputy Commissioner and testified consistent with his Recorded Statement, provided to The Travelers Insurance Company, that he did not see Employee-Plaintiff's fall, nor did he recall helping Employee-Plaintiff off the ground after an alleged fall. David Taylor also did not recall being advised by Employee-Plaintiff of any alleged fall prior to Employee-Plaintiff being hospitalized at a later date.
9. Employee-Plaintiff further testified at hearing before the Deputy Commissioner, consistent with his Recorded Statement that as a result of this fall, his chest was bleeding and that he had sought medical treatment with the company first aid kit, to clean his wounds.
10. Archie Griffith appeared at the hearing before the Deputy Commissioner and testified as to his recollection of the events on the alleged date of loss, June 2, 2002. Archie Griffith testified he did not recall seeing Employee-Plaintiff bleeding on the day in question or providing first aid to the Employee-Plaintiff. Archie Griffith did not recall any report of an injury occurring on June 2, 2002 being made to him by Employee-Plaintiff, prior to the Employee-Plaintiff being hospitalized at a later date.
11. The testimony of Employee-Plaintiff's co-workers regarding June 2, 2002, is consistent in that both individuals stated at the hearing before the Deputy Commissioner and in their Recorded Statements that they had no recollection of Employee-Plaintiff reporting any work-related incident to them on the date in question. There are no emergency room reports concerning Plaintiff's fall.
12. The first medical note introduced into evidence in the Record is from Carolinas Medical Center and is dated June 4, 2002. In that note, Employee-Plaintiff presented to emergency room physicians with complaints of shortness of breath and chest pains. Employee-Plaintiff was noted on examination to have a productive cough and was diagnosed with viral pericarditis, mild exogenous obesity and minor chest wall trauma.
13. Employee-Plaintiff was treated at Carolinas Medical Center for a viral infection from June 4, 2002, through June 7, 2002.
14. At time of discharge on June 7, 2002, the Discharge Note indicated that Employee-Plaintiff's treating physician, Dr. Maxwell believed "The two are unrelated and that the patient was likely suffering from paracardial effusion due to alternative etiology such as a virus." Dr. Maxwell further opined that the most common cause of paracardial effusion is a virus of unknown identity.
15. After Employee-Plaintiff's release from Carolinas Medical Center, he returned to work for the Employer-Defendant.
16. Employer-Plaintiff continued to work for Employer-Defendant as a yard service technician, earning the same wages as he earned pre-injury from June 13, 2002, through August 8, 2002.
17. Employee-Plaintiff was terminated by Employer-Defendant on or about August 19, 2002, after he failed to report to work for three consecutive days.
18. Employee-Plaintiff testified before the Deputy Commissioner that he left employment with Employer-Defendant for a better paying job. As of August 19, 2002, when Employee-Plaintiff last worked for Employer-Defendant, Employee-Plaintiff had not missed more than seven (7) days from work.
19. On September 21, 2002, Employee-Plaintiff was examined by physicians at Union Regional Medical Center and was admitted with a diagnosis of paracardial effusion. Employee-Plaintiff was treated at Union Regional Medical Center from September 21, 2002 through September 27, 2002.
20. Employee-Plaintiff's paracardial effusion required surgical intervention to drain the fluid around his heart.
21. It is more likely than not that Employee-Plaintiff's paracardial effusion noted by Carolinas Medical Center physicians in June 2002, with a recurrence in September 2003, was caused by infection and not by any trauma resulting from a fall.
22. Even if Employee-Plaintiff had a fall as alleged on June 2, 2002, it is unlikely such a fall would have resulted in paracardial effusion in September 2002.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the undersigned makes the following:
 CONCLUSIONS OF LAW
1. The Plaintiff has failed to show by the greater weight of the evidence that his paracardial effusion and related symptoms were a result of a fall he experienced on or about June 2, 2002. To the contrary, the medical evidence tends to show that his paracardial effusion was from something other than a traumatic blow as a result of his fall. N.C. Gen. Stat. § 97-2(6).
 ***********
Based upon the foregoing Findings of Fact and Conclusions of Law, the undersigned enters the following:
 AWARD
1. Plaintiff's claim is and under the law must be DENIED.
2. Each side shall pay its own costs, except the Defendants shall pay an expert witness fee of $375.00 to Dr. Michael Maxwell.
This the ___ day of October, 2004.
 S/_____________ PAMELA T. YOUNG COMMISSIONER
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
PTY:db